## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

UNIVERAL PROTECTION SERVICE, LP,
d/b/a ALLIED UNIVERSAL,
          Plaintiff,

                                  Court File No. 5:23-cv-00802

v.

PROSEGUR SECURITY USA, *et al.*,
          Defendants.

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF, DAMAGES, AND ATTORNEYS' FEES

Plaintiff Allied Universal Services of America, LP ("Allied Universal"), by and through their undersigned counsel, files its Verified Complaint for Injunctive Relief, Damages, and Attorneys' Fees against Defendants Prosegur Security USA ("Prosegur"), Dave Schiller ("Schiller"), Felicia Solis-Ramirez ("Solis-Ramirez"), Samantha Sanchez ("Sanchez"), Roy Vallejo ("Vallejo"), and Tennille Gray ("Gray").

## INTRODUCTION

This trade secrets and restrictive covenants action is brought to halt an ongoing, unlawful scheme by a group of former high-level Allied Universal employees who have exploited a position of trust for personal gain. In violation of both common and statutory obligations, Defendants have engaged in a campaign to steal trade secrets, customers, and other confidential information, and take it to Prosegur, a direct competitor of Allied Universal. Defendants have violated – and absent judicial intervention – will continue to violate, their legal and contractual obligations to Allied Universal.

Further, without this Court's intervention, Prosegur and the other named Defendants will continue their tortious interference with Allied Universal's customers and current employees. Such interference will cause insurmountable damage to Allied Universal's business interests.

Allied Universal has attempted to rectify the illegal activities carried out by the Defendants on multiple occasions; however, this lawsuit has now become essential to prevent Allied Universal from suffering ongoing damages.

## PARTIES AND OTHER ENTITIES

1. Allied Universal is a provider of security guard services and other security solutions to a wide range of industries. It provides contract security services involving, among other things, the provision of uniformed security officers at offices, retail establishments, universities, and other business locations.

2. Prosegur is a corporation or other business entity with its principal place of business in Herndon, Virginia. Prosegur appears on the State's registry of licensed businesses as "Prosegur Services Group, Inc." Prosegur is subject to service of process through its registered agent, CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Ste. 620, Austin, Texas 78701.

3. Solis-Ramirez is a former employee of Allied Universal. Solis-Ramirez is a resident of the State of Texas. Upon information and belief, she may be served with process at 165 S. Hill Drive, Lytle, Texas 78052. Solis-Ramirez worked for Allied Universal as a General Manager in San Antonio, Texas.

4. Vallejo is a former employee of Allied Universal. Vallejo is a resident of the State of Texas. Upon information and belief, he may be served with process at 514 N. 3rd Street, Carrizo Springs, Texas 78834. Vallejo worked for Allied Universal as an Director of Operations in San Antonio, Texas.

5. Sanchez is a former employee of Allied Universal. Sanchez is a resident of the State of Texas. Upon information and belief, she may be served with process at 10219 Dancing Brk, San Antonio, Texas 78254. Sanchez worked for Allied Universal as a Client Portfolio Director.

6. Schiller is a former employee of Allied Universal. Schiller is a resident of the State of Texas. Upon information and belief, he may be served with process at 304 Charli Circle, Liberty Hill, Texas 78642. Schiller worked for Allied Universal as a General Manager.

7. Gray is a former employee of Allied Universal. Gray is a resident of the State of Texas. Upon information and belief, she may be served with process at 16813 Trevin CV, Manor, Texas 78653. Gray worked for Allied Universal as a Regional Recruiter.

8. H-E-B is a Texas limited liability company with its principal place of business in San Antonio, Texas. H-E-B is a provider of supermarket services and other retail solutions to a wide range of consumers. Allied Universal is the sole provider of security services to H-E-B in Texas.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this proceeding under 28 U.S.C. § 1331, as Allied Universal asserts claims that arise under the laws of the United States, namely, the federal Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, et seq.

10. The Court has supplemental jurisdiction over Allied Universal's state-law and common law claims under 28 U.S.C. § 1367, because those claims are so related to Allied Universal's federal question claims that they form part of the same case or controversy.

11. Venue is proper in this Court because all Defendants either worked in Bexar County, Texas, or the actions and events complaint of in this lawsuit were coordinated from and substantially occurred and resulted in damages in Bexar County, Texas, and surrounding areas.

## FACTUAL BACKGROUND

### A.  Allied Universal's Business Operations

12. Allied Universal is a security services company. It provides customized security solutions and supplies security guards to a wide array of business and sites, including offices, retail establishments, storage facilities, construction sites, and other locations throughout the United States.

13. The security services landscape is an ever-evolving industry that has changed significantly since Allied Universal's inception and is highly competitive.

14. Allied Universal tailors its provided security solutions to each of its clients' needs. Allied Universal has also researched and invested in technology and strategically implemented the tools that are best suited to each of its individual customers. It works with each customer to design custom and cost-effective security solutions. Even among similar businesses, the best security approach will differ based on the personalities of its patrons and preferences of the individual owners and operators.

15. In connection with its business, Allied Universal maintains a substantial amount of confidential, proprietary and/or trade secret information including, but not necessarily limited to: customer lists; research and other information relating to customers, prospective customers and referral sources; marketing and sales strategies; strategic plans and business methods; pricing; coding, invoice and billing information; bid information, proposals, and quotes; information relating to compensation of employees; processes; protocols; designs; technical data; research; trade secrets; services; data; techniques; inventions (whether patentable or not); works of authorship; and other information concerning Allied Universal's actual or anticipated business, research or development and other confidential or proprietary information, which

DocuSign Envelope ID: C4B72003-135E-490B-A737-095934478CBB

relates to Allied Universal's business, all of which has been developed, researched and/or acquired by Allied Universal with considerable effort and expense.

16. This information is confidential to Allied Universal and is not readily available to competitors or the general public. In order to protect its investment, Allied Universal takes appropriate steps to protect the confidentiality of its information, such as restricting access to the information, password protecting its servers and individual devices, and requiring employees to sign confidentiality agreements like the one that each of the named individual Defendants executed with Allied Universal. This information presents Allied Universal with the opportunity to maintain a significant economic and competitive advantages over its competitors.

B. **Schiller's Employment with Allied Universal**

17. Dave Schiller ("Schiller") was hired by Allied Universal as a General Manager.

18. Schiller's job duties were strategic and wide ranging, including the exercise of operational authority and oversight of Allied Universal sites in his geographical area, which included but was not limited to the greater Austin area.

19. As a General Manager, Schiller was in a leadership position of trust with Allied Universal that provided him with access to highly confidential and trade secret information regarding company operations and financials, training modules, as well as significant information related to Allied Universal's customers and clients.

20. As a condition of his employment, Schiller executed an Employment and Non-Compete Agreement. The signed agreement imposed specific prohibitions on Schiller including: (i) competing against Allied Universal by performing tasks similar to those they performed for Allied Universal in the same geographic territory in which they worked for Allied Universal;

(ii) soliciting certain Allied Universal customers and employees; and (iii) using or disclosing Allied Universal's confidential information. *See* Employment and Non-Compete Agreement, attached as **Exhibit 1** to this Complaint.

21. The Non-Compete Agreement contains a non-compete provision which in relevant part provides:

> Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.

> i. "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Employee performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company in a Prohibited Territory for an entity engaged in the Business (as defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

> ii. "Business" means: (a) the business of marketing, selling, and/or providing contract security services; and (b) the business engaged in by the Company as of Employee's last day of employment with the Company.

> iii. "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Employee assisted the Company to engage in the Business at any time during the last twelve (12) months of Employee's employment with the Company; and (b) any territory assigned to Employee by the Company at any time during the last twelve (12) months of Employee's employment with the Company.

22. The Non-Compete Agreement contains a non-solicitation provision with respect to current and prospective customers, which in relevant part provides:

> Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) solicit, encourage, cause or attempt to cause any Restricted Customer (as defined below) to purchase any services or products from any business other than the Company that are competitive with or a substitute for the services or products offered by the Company; (b) sell or provide any services or products to any Restricted Customer that are competitive with or a substitute for

the Company's services or products; (c) solicit, encourage, cause or attempt to cause any supplier of goods or services to the Company not to do business with or to reduce any part of its business with the Company; or (d) make any disparaging remarks about the Company or its business, services, affiliates, officers, managers, directors or management employees, whether in writing, verbally, or on any online forum.

i. "Restricted Customer" means: (a) any customer or prospective customer of the Company with whom Employee had contact or communications at any time during Employee's last twelve (12) months as a Company employee; (b) any customer of the Company for whom Employee supervised the Company's portfolio or dealings at any time during Employee's last twelve (12) months as a Company employee; and/or (c) any customer or prospective customer of the Company about whom Employee obtained any Confidential Information (as defined below) during Employee's last twelve (12) months as a Company employee.

23.    The Non-Compete Agreement contains a non-solicitation provision with respect to employees, which in relevant part provides:

Employee covenants and agrees that for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) hire or engage as an employee or as an independent contractor any person employed by the Company; (b) recruit, solicit or encourage any employee or independent contractor to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Employee's last six (6) months with the Company.

24.    The Non-Compete Agreement contains a confidentiality provision, which in relevant part provides:

Employee agrees and acknowledges that the Company has developed Confidential Information at great time and expense and further agrees that the Company has provided and/or will provide and will continue to provide Employee with access to Confidential Information and specialized training. Employee covenants and agrees that, except to the extent the use or disclosure of any Confidential Information is required to carry out Employee's assigned duties with the Company, during Employee's employment with the Company and for five (5) years thereafter: (a) Employee shall keep strictly confidential and not disclose to any person not employed by the Company any Confidential Information; and (b) Employee shall not use for Employee or for any person or entity other than the Company any Confidential Information. However, this provision shall not preclude Employee from: (i) the use or disclosure of information known generally to the public (other than information known generally to the public as a result of Employee's violation

of this Section); or (ii) any disclosure required by law or court order so long as Employee provides the Company immediate written notice of any potential disclosure under this subsection and fully cooperates with the Company to lawfully prevent or limit such disclosure.

i. "Confidential Information" means all confidential, proprietary or business information related to the Company's Business that is furnished to, obtained by, or created by Employee during Employee's employment with the Company and which could be used to harm or compete against the Company. Confidential Information includes, by way of illustration, such information relating to: (a) the Company's formulae and processes used to calculate and negotiate prices to be charged customers; (b) employee wages and other personnel information; (c) Company customers, including customer lists, preferences, contact information, contractual terms, prices, and billing histories; (d) the Company's finances, including financial statements, balance sheets, sales data, forecasts, and cost analyses; (e) the Company's plans and projections for business opportunities for new or developing business, including marketing concepts and business plans; (f) the Company's research and development activities, technical data, computer files, and software; and (g) the Company's operating methods, business processes and techniques, services, products, prices, costs, service performance, and operating results.

### C. <u>Schiller's Voluntary Resignation from Allied Universal to Work at Prosegur</u>

25. On June 10, 2022, Schiller resigned from his position at Allied Universal.

26. Prior to resigning, Allied Universal became aware that Schiller accepted a position at Prosegur, a direct competitor in the security services industry.

27. Given the implications of Schiller's move to a direct competitor and his execution of the Employment and Non-Compete Agreement, Allied Universal sought assurances from both Schiller and Prosegur that the provisions of the Agreements would be strictly adhered to.

28. In response, Prosegur informed Allied Universal that Schiller's role as Senior Vice President at Prosegur would not violate his Employment and Non-Compete Agreement with Allied Universal.

29. Given Schiller's access to substantial confidential and proprietary information, Allied Universal sought further assurances that any and all confidential information in Schiller's possession would be returned and/or deleted.

30. Additionally, Allied Universal requested that Schiller sign an affidavit affirming the same.

31. In response, Schiller refused to sign the affidavit despite repeated inquiries from both Allied Universal and his new employer, Prosegur.

32. To date, Allied Universal has not received a signed affidavit from Schiller.

33. On or around July 2022, Allied Universal identified concerning LinkedIn posts by Schiller that openly flaunted violations of his Employment and Non-Compete Agreement.

34. In the LinkedIn post, Schiller announced his departure from Allied Universal for his new role as Senior Vice President at Prosegur.

35. The announcement was accompanied with the following image:



36. Following the LinkedIn post, Allied Universal became concerned that Schiller was violating the non-solicitation provisions of his Employment and Non-Compete Agreement.

37. However, Prosegur assured Allied Universal that the social media posts would be removed, and that Schiller would be closely monitored to ensure no further violations of the Employment and Non-Compete Agreement.

38. Despite these assurances, on or around March 2023, Schiller corresponded with Allied Universal's Director of Operations for the San Antonio area, Eric Huss ("Huss"), in an effort to bring him to Prosegur.

39. After their initial correspondence, Schiller called Huss to gauge his interest in working for Prosegur.

40. Upon discovering Schiller's efforts to solicit existing Allied Universal employees, Allied Universal sent correspondence to Prosegur on June 23, 2023, reminding them of Schiller's post-employment contractual obligations and to seek clarity on the circumstances surrounding the solicitation of Allied Universal employees. *See* Allied Universal's Correspondence, attached as **Exhibit 2** to this Complaint.

41. On June 26, 2023, Prosegur stated that it was investigating the allegations.

42. Schiller's conduct constitutes deliberate, willful, and knowing violations of his Employment and Non-Compete Agreement.

43. Upon information and belief, Schiller has solicited Allied Universal employees despite specific restrictions in the Agreements prohibiting such solicitation.

**D.  Mass Resignations of Allied Universal's H-E-B Team**

44. Since the lapse of Schiller's non solicitation agreement, four (4) Allied Universal employees who worked and managed the H-E-B portfolio for Allied Universal resigned:

- Felicia Solis-Ramirez effective June 14, 2023;

- Samantha Sanchez and Roy Vallejo effective July 6, 2023; and

- Arturo Cruz effective July 7, 2023.

**E.  Felicia Solis-Ramirez's Departure from Allied Universal and Deliberate Concealment of Employment with Prosegur**

45. Solis-Ramirez was employed as a General Manager for Allied Universal in the San Antonio Branch.

46. As a condition of her employment, and in exchange for access to Allied Universal's confidential and proprietary information, on November 1, 2022, Solis-Ramirez entered into an Employment and Non-Compete Agreement with Allied Universal containing various post-employment obligations. *See* Non-Compete Agreement, attached as **Exhibit 3** to this Complaint.

47. As a General Manager, Solis-Ramirez had a wide range of responsibilities, including but not limited to:

- Ensuring delivery of world class customer service to all clients while managing client relations, new job startups/transitions of new accounts, and employee relations;
- Managing day to day operations of the branch, coaching, developing and guiding the branch team to perform efficiently and effectively;
- Implementing and monitoring ongoing compliance with all company-wide programs such as licensing, investigations (employee and general liability/auto), employee benefit programs, office procedures, vehicle patrol policies, employee coaching/discipline;
- Assuming responsibility for branch profitability, overseeing control of all financial impacts to the branch, including daily and weekly unbilled overtime and training expenses;
- Assisting the Regional Vice President in planning on both a short-term and long-term basis, for future operational growth and expansion;
- Directing and administering the core security operation of the branch, providing guidance and support on all operational issues related to client relations (payroll and billing resolution, recruiting and hiring, service issues, etc.);
- Assuming responsibility for Fire/Life Safety issues at all customer and patrol locations, and directing the implementation of such programs, utilizing corporate resources where applicable;
- Overseeing and managing operational, financial functions including payroll, billing, accounts receivable, scheduling, recruiting, training, etc. for the region; and
- Generating new business through partnership with Regional Business Development Manager

48. Throughout her tenure as General Manger, Solis-Ramirez faced numerous instances where her direct reports departed to join a direct competitor. In each circumstance, Solis-Ramirez took the initiative to inform these individuals about the forthcoming enforcement of their non-compete agreements.

49. On or about June 7, 2022, Solis-Ramirez entered into an Incentive Units Award Restrictive Covenant Agreement with Atlas Ontario, LP (a parent company of Allied Universal) under which Solis-Ramirez was granted certain incentive units as well as additional access to Allied Universal's confidential information, goodwill and specialized training in exchange for additional post-employment obligations. *See* Restrictive Covenant Agreement, attached as **Exhibit 4** to this Complaint.

50. Solis-Ramirez maintained significant oversight of manned security services for Allied Universal in the greater San Antonio area.

51. One of the clients that Solis-Ramirez oversaw on behalf of Allied Universal was H-E-B.

52. Solis-Ramirez specifically managed the security services for all H-E-B sites in the San Antonio area.

53. Solis-Ramirez therefore had intimate knowledge of Allied Universal's custom and cost-effective security solutions and had unfettered access to sensitive and confidential pricing information, business plans, marketing strategies, and other non-public information.

54. Solis-Ramirez initially tendered her notice of resignation on June 1, 2023.

55. Given Solis-Ramirez's position with H-E-B and her execution of her Employment, Non-Compete and Incentive Unit Agreements, Allied Universal inquired as to Solis-Ramirez's next place of employment.

56. In response, Solis-Ramirez falsely informed Allied Universal that she would be pursuing a role with Microsoft with responsibility for security management of their locations in South America, but did not disclose any specific details.

57. Upon being asked for specific job duties and whether Solis-Ramirez would be open to discussing her continuing employment with Allied Universal, Solis-Ramirez immediately stopped being responsive to Allied Universal and subsequently adjusted her effective resignation date from June 29, 2023 to June 14, 2023.

58. Since her resignation, Allied Universal has been made aware that Solis-Ramirez was dishonest when she told Allied Universal that she would be working at Microsoft.

59. Allied Universal has since been made aware that Solis-Ramirez has accepted a position at Prosegur.

60. Following her resignation and acceptance of her new position with Prosegur, four (4) of Solis-Ramirez's direct reports: Samantha Sanchez, Roy Vallejo, Savannah Kriger, and Arturo Cruz – who also worked on the H-E-B client portfolio – abruptly resigned.

61. Additionally, Solis-Ramirez sent the following email directly to the San Antonio H-E-B leadership team:

Departure from AUS

Solis-Ramirez, Felicia <Felicia.Solis-Ramirez@aus.com>
To ● Hernandez,Rick; ● Quarles,Quincy; ● cano.daniel.r@heb.com; ● mayo.eric@heb.com
Cc ● Sanchez, Samantha; ● Vallejo, Roy

Fri 6/9/2023 11:54 AM

Good afternoon, guys.

I wanted to share with you that I will be leaving AUS in the upcoming week. I am so appreciative of the lessons learned through the relationships developed with each of you and look forward to continuing those relationships in my next chapter.

Sam will continue to oversee the HEB portfolio and the AUS leadership team is working on finding a suitable replacement to oversee the San Antonio and Border markets.

HEB has always been my home away from home. I'm a loyal, 4-5X a week customer and the mission and vision of the security team has always been one that was near and dear to my heart. While my involvement with your teams directly may change, I'm looking forward to continuing to lean on each other to change the posture of Security overall.

Best Wishes,
Felicia

62. Given that Allied Universal is the sole security provider for H-E-B in the greater San Antonio area, and Solis-Ramirez's new role at a direct competitor, her involvement with H-E-B in any capacity at Prosegur constitutes a breach of her restrictive covenants.

63. Allied Universal subsequently demanded the return of all company property from Solis-Ramirez.

64. It took approximately two weeks for Solis-Ramirez to return her work computer and work cellphone – both of which contain significant amounts of confidential and proprietary information – to Allied Universal.

65. Notably, Solis-Ramirez never personally returned her work computer or her work cellphone. Instead, her work computer was returned by Savannah Kriger, who has also resigned from Allied Universal to work for Prosegur and her work cellphone was shipped back to Allied Universal.

66. Solis-Ramirez has additionally been non-responsive to Allied Universal's attempts to discuss the violations of her Employment and Non-Compete Agreement.

67. Furthermore, Allied Universal was notified that subsequent to tendering her resignation with Allied Universal and notifying H-E-B of the same, Solis-Ramirez was observed dining with H-E-B leadership.

68. At the time she was observed dining with H-E-B, Solis-Ramirez told Allied Universal she was unable to return her Company cellphone because she was out of town.

**F.** **Sanchez's Departure from Allied Universal and Violation of Confidentiality the Provisions of her Non-Solicitation Agreement**

69. Sanchez was hired on July 12, 2019 as a Client Portfolio Director at Allied Universal in the San Antonio Branch, where she reported directly to Solis-Ramirez and worked almost exclusively on the H-E-B portfolio.

70. As a condition of her employment, and in exchange for access to Allied Universal's confidential and proprietary information, on September 16, 2021, Sanchez entered into an Employment and Non-Solicit Agreement with Allied Universal containing various post-employment obligations. *See* Employment and Non-Solicitation Agreement, attached as **Exhibit 5**.

71. On June 19, 2023, Sanchez tendered her resignation.

72. On the day of Sanchez's resignation from Allied Universal, Sanchez sent herself numerous files containing confidential and proprietary information.

73. Indeed, Sanchez accessed and stored, among other things, pay and bill rates, HPW, and equipment for nearly every H-E-B site across the state of Texas.

74. On June 23, 2023, Sanchez was questioned about her removal of confidential and proprietary information by Regional HR Director, LaShonda Tenner.

75. In her interview, Sanchez could not provide Ms. Tenner with a valid reason for sending the files to her personal email account.

DocuSign Envelope ID: C4B72003-13FE-490B-A737-995934478CBB

76. When questioned further, Sanchez indicated to Ms. Tenner that she "knows how this looks," seemingly to reference the suspicious timing of her resignation and her theft of confidential information related to H-E-B.

77. Allied Universal has since attempted to confirm the retrieval and/or deletion of the stolen confidential information but has not received any correspondence from Sanchez.

### G. Roy Vallejo's Departure from Allied Universal and Deliberate Concealment of Employment with Prosegur

78. Vallejo was hired on December 27, 2021, and worked as a Director of Operations.

79. Similar to Sanchez, Vallejo was a direct report to Solis-Ramirez tasked with significant oversight of the H-E-B portfolio.

80. On January 20, 2023, as a condition of his employment, and in exchange for access to Allied Universal's confidential and proprietary information, Vallejo entered into an Employment and Non-Compete Agreement with Allied Universal containing various post-employment obligations. *See* Employment and Non-Compete Agreement, a true and correct copy of which is attached as Exhibit 6 to this Complaint.

81. Similarly to Solis-Ramirez, on July 8, 2022, Vallejo entered into an Incentive Units Award Restrictive Covenant Agreement with Atlas Ontario, LP (a parent company of Allied Universal) under which Vallejo was granted certain incentive units as well as additional access to Allied Universal's confidential information, goodwill and specialized training in exchange for additional post-employment obligations. *See* Restrictive Covenant Agreement, attached as **Exhibit 7**.

82. On June 19, 2023, Vallejo voluntarily terminated his employment relationship with Allied Universal.

83. Given the wave of abrupt resignations, Allied Universal conducted an initial forensic analysis of Vallejo's work computer. The forensic analysis uncovered the following email from Prosegur Human Resource Manager, Tennille Gray:



84. In response to the Offer Letter sent from Gray, on June 19, 2023, Vallejo responded saying, "Good morning, Tennille. I can't…sign the policy it won't let me [sign] on the docu sign." Indicating his attention to accept the terms of his offer of employment with Prosegur.

85. Vallejo's Non-Compete Agreement contains a non-compete provision, which in relevant part provides:

> Employee covenants and agrees that, for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.
>
> i.  "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Employee performed

on behalf of the Company at any time during the last twelve (12) months of employment with the Company in a Prohibited Territory for an entity engaged in the Business (as defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

ii. "Business" means: (a) the business of marketing, selling, and/or providing contract security services; and (b) the business engaged in by the Company as of Employee's last day of employment with the Company.

iii. "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Employee assisted the Company to engage in the Business at any time during the last twelve (12) months of Employee's employment with the Company; and (b) any territory assigned to Employee by the Company at any time during the last twelve (12) months of Employee's employment with the Company.

86. Vallejo's Restrictive Covenant Agreement contains also contains a non-compete provision which in relevant part provides:

Participant covenants and agrees that during Participant's employment with the Company and for a period of twelve (12) months following Participant's last day of employment with the Company, Participant shall not: (a) engage in any Competitive Activity (as defined below) within the Prohibited Territory (as defined below); or (b) assist anyone else in engaging in Competitive Activity within the Prohibited Territory.

i. "Competitive Activity" means competing against the Company by performing the same or substantially similar work as Participant performed on behalf of the Company at any time during the last twelve (12) months of employment with the Company or performing work that requires the use of or disclosure of Confidential Information anywhere in a Prohibited Territory for an entity engaged in the Business (as defined below). Notwithstanding the preceding, owning the stock or options to acquire stock totaling less than 5% of the outstanding shares in a public company shall not constitute, by itself, Competitive Activity.

ii. "Business" means: the business engaged in by the Company at any time during the last twelve (12) months of Participant's employment with the Company, as limited to the line or lines of business that are the same or substantially similar to those for which the Participant performed services on behalf of the Company.

iii. "Prohibited Territory" means: (a) each city and county (or equivalent local unit of government) where Participant assisted the Company to engage in the Business at any time during the last twelve (12) months of Participant's employment with the Company; and (b) any territory assigned to Participant by the Company at any

DocuSign Envelope ID: C4B72003-13FE-490B-A737-985934478CBB

time during the last twelve (12) months of Participant's employment with the Company.

87. On or about June 23, 2023, Vallejo was provided with a reminder of his post-employment obligations to Allied Universal. *See* Allied Universal's Post-Employment Obligation Reminder, attached as **Exhibit 8**.

88. No response was received from Vallejo.

89. Vallejo's responsibilities with Prosegur include the same or very similar responsibilities as those he held with Allied Universal.

90. Vallejo's new role with Prosegur directly violates his executed Employment, Non-Compete, and Restrictive Covenant Agreements.

**H.  Tennille Gray's Violation of Non-Solicitation Agreement**

91. Gray was hired by Allied Universal as Regional Recruiter working out of Allied Universal's Austin, Texas office.

92. As a condition of her employment, and in exchange for access to Allied Universal's confidential and proprietary information, on June 21, 2021, Gray entered into an Employment and Non-Solicitation Agreement with Allied Universal containing various post-employment obligations. *See* Employment and Non-Solicitation Agreement, a true and correct copy of which is attached as Exhibit 9 to this Complaint.

93. The Non-Solicitation Agreement contains a non-solicitation provision with respect to employees, which in relevant part provides:

> Employee covenants and agrees that for a period of twelve (12) months following Employee's last day of employment with the Company, Employee shall not, directly or indirectly: (a) hire or engage as an employee or as an independent contractor any person employed by the Company; (b) recruit, solicit or encourage

any employee or independent contractor to leave his or her employment or engagement with the Company; and/or (c) hire or engage any person employed by the Company at any point during Employee's last six (6) months with the Company.

94. Gray's restriction on solicitation is effective from December 26, 2022 to December 26, 2023.

95. On December 26, 2022, Gray voluntarily terminated her employment relationship with Allied Universal.

96. Allied Universal has since learned that Gray accepted employment with Prosegur in December 2022.

97. As discussed above, a forensic analysis of Vallejo's work computer uncovered an email from Gray to Vallejo entitled "Re: Complete with DocuSign: Exempt Offer Letter – Roy Vallejo.docx..." As disclosed above, Gray sent Vallejo various documents to sign in anticipation of his new employment with Prosegur. Rather ironically, the documents sent by Gray to Vallejo included the following (1) Exempt Offer Letter – Roy Vallejo; (2) Prosegur Confidentiality Invention Assignment and Non Solicitation, Prosegur Employee Handbook, and 2023 Prosegur USA Management Vacation Policy.

## CAUSES OF ACTION
### COUNT 1
### BREACH OF CONTRACT—INJUNCTIVE RELIEF
### (Against Solis-Ramirez)

98.    Allied Universal incorporates all prior paragraphs of this Complaint.

99.    As part of Defendant Solis-Ramirez's employment with Allied Universal, she entered into an Employment and Non-Compete Agreement with Allied Universal that governed her actions both while employed with Allied Universal, as well as post-employment.

100.    Solis-Ramirez's Agreement is a valid and enforceable contract containing, among other provisions, a non-competition covenant, a non-interference covenant, a non-raiding covenant, and a confidentiality and non-disclosure covenant.

101.    At all applicable times, Allied Universal has performed its duties under the Agreement.

102.    Defendant Solis-Ramirez, however, has materially breached the Agreement by taking the following actions:

a.    Becoming employed by a direct competitor in a position that requires the same or substantially similar job duties as those performed for Allied Universal in violation of her non-competition covenant;

b.    Soliciting or planning to solicit H-E-B, one of Allied Universal's largest customers in San Antonio, in violation of her non-interference covenant;

c.    Soliciting or planning to solicit current Allied Universal employees in violation of her non-raiding covenant;

d.    Becoming employed by a direct competitor in a position that will inevitably lead to the disclosure of Allied Universal's trade secret and/or confidential information in violation of her confidentiality and non-disclosure covenant; and

e.    Retaining Allied Universal property in the form of a laptop computer and cellular phone that contain confidential information and trade secrets.

103.    On or around June 1, 2023, Defendant Solis-Ramirez resigned her employment with Allied Universal and stated her intent to accept a position with Microsoft.

104.    In fact, this was a lie, and Defendant Solis-Ramirez had already accepted a substantially similar position with Prosegur – a direct competitor of Allied Universal.

105.    On June 23, 2023 – the same day it learned of Defendant Solis-Ramirez's dishonesty about her departure – Allied Universal notified Defendant Solis-Ramirez of its belief that her employment with Prosegur would violate her post-employment obligations under the Agreement.

106.    Specifically, Allied Universal sent Defendant Solis-Ramirez cease and desist correspondence dated June 23, 2023, via both electronic mail and overnight United Parcel Service Saturday airmail delivery. *See* **Exhibit 10**.

107.    As of the date of this filing, Defendant Solis-Ramirez has yet to respond to Allied Universal's cease and desist correspondence.

108.    Defendant Solis-Ramirez is currently employed by Prosegur, performing the same or substantially similar job duties as those she performed for Allied Universal.

109.    Defendant Solis-Ramirez's employment with Prosegur is a material breach of the non-competition covenant in the Agreement.

110.    Defendant Solis-Ramirez's agreement is equitably tolled during the period of her breach.

111.    As a result of Defendant Solis-Ramirez's breach of her obligations under the Agreement, Prosegur has received revenues and profits to which it is not entitled.

112.    Allied Universal has also suffered damages as a result of Defendant Solis-Ramirez's conduct, including loss of their substantial training and other investments in Defendant Solis-Ramirez.

113.    Allied Universal has no adequate remedy at law.

114.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendant

Solis-Ramirez from continuing to engage in misconduct and violation of the Agreement, along with applicable damages.

## COUNT 2
### BREACH OF CONTRACT—INJUNCTIVE RELIEF
### (Against Vallejo)

115.    Allied Universal incorporates all prior paragraphs of this Complaint.

116.    As part of Defendant Vallejo's employment with Allied Universal, he entered into an Employment and Non-Compete Agreement with Allied Universal that governs his actions both while employed with Allied Universal, as well as post-employment.

117.    Vallejo's Agreement is a valid and enforceable contract containing, among other provisions, a non-competition covenant, a non-interference covenant, a non-raiding covenant, and a confidentiality and non-disclosure covenant.

118.    At all applicable times, Allied Universal has performed its duties under the Agreement.

119.    Defendant Vallejo, however, has materially breached the Agreement by taking the following actions:

a.    Becoming employed by a direct competitor in a position that requires the same or substantially similar job duties as those performed for Allied Universal in violation of his non-competition covenant;

b.    Soliciting or planning to solicit H-E-B, one of Allied Universal's largest customers in San Antonio, in violation of his non-interference covenant;

c.    Soliciting or planning to solicit current Allied Universal employees in violation of his non-raiding covenant; and

d.    Becoming employed by a direct competitor in a position that will inevitably lead to the disclosure of Allied Universal's trade secret and/or confidential information in violation of his confidentiality and non-disclosure covenant.

120.    On or around June 19, 2023, Defendant Vallejo resigned his employment with Allied Universal.

121.    Defendant Vallejo neglected to inform Allied Universal why he was resigning or where he was going.

122.    In fact, Defendant Vallejo had already accepted a substantially similar position with Prosegur – a direct competitor of Allied Universal.

123.    On June 23, 2023 – the same day it learned of Defendant Vallejo's departure for Prosegur – Allied Universal notified Defendant Vallejo of its belief that his employment with Prosegur would violate his post-employment obligations under the Agreement. Specifically, Allied Universal sent Defendant Vallejo cease and desist correspondence dated June 23, 2023, via both electronic mail and overnight United Parcel Service Saturday airmail delivery. *See* **Exhibit 8**.

124.    As of the date of this filing, Defendant Vallejo has yet to respond to Allied Universal's cease and desist correspondence.

125.    Defendant Vallejo is currently employed by Prosegur, performing the same or substantially similar job duties as those he performed for Allied Universal. Defendant Vallejo's employment with Prosegur is a material breach of the non-competition covenant in the Agreement.

126.    Defendant Vallejo's agreement is equitably tolled during the period of his breach.

127.    As a result of Defendant Vallejo's breach of his obligations under the Agreement, Prosegur has received revenues and profits to which it is not entitled.

128.    Allied Universal has also suffered damages as a result of Defendant Vallejo's conduct, including loss of their substantial training and other investments in Defendant Vallejo. Allied Universal has no adequate remedy at law.

129.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendant Vallejo from continuing to engage in misconduct and violation of the Agreement, along with applicable damages.

## **COUNT 3**
## **BREACH OF CONTRACT—INJUNCTIVE RELIEF**
### **(Against Sanchez)**

130.    Allied Universal incorporates all prior paragraphs of this Complaint.

131.    As part of Defendant Sanchez's employment with Allied Universal, she entered into an Employment and Non-Solicit Agreement with Allied Universal that governs her actions both while employed with Allied Universal, as well as post-employment.

132.    Defendant Sanchez's Agreement is a valid and enforceable contract containing, among other provisions, a non-interference covenant, a non-raiding covenant, and a confidentiality and non-disclosure covenant.

133.    At all applicable times, Allied Universal has performed its duties under the Agreement.

134.    Defendant Sanchez, however, has materially breached the Agreement by taking the following actions:

a.    Soliciting or planning to solicit H-E-B, one of Allied Universal's largest customers in the San Antonio area, in violation of her non-interference covenant;

b.    Soliciting or planning to solicit current Allied Universal employees in violation of her non-raiding covenant; and

c.    Becoming employed by a direct competitor in a position that will inevitably lead to the disclosure of Allied Universal's trade secret and/or confidential information in violation of her confidentiality and non-disclosure covenant.

135.    On or around June 20, 2023, Defendant Sanchez resigned her employment with Allied Universal.

136.    Defendant Sanchez neglected to inform Allied Universal why she was resigning or where she was going.

137.    In fact, Defendant Sanchez had already accepted a substantially similar position with Prosegur – a direct competitor of Allied Universal.

138.    On June 23, 2023 – the same day it learned of Defendant Sanchez's departure for Prosegur – Allied Universal notified Defendant Sanchez of its belief that her employment with Prosegur would violate her post-employment obligations under the Agreement.

139.    Specifically, Allied Universal sent Defendant Sanchez cease and desist correspondence dated June 23, 2023, via both electronic mail and overnight United Parcel Service Saturday airmail delivery. *See* **Exhibit 11**.

140.    As of the date of this filing, Defendant Sanchez has yet to respond to Allied Universal's cease and desist correspondence.

141.    Defendant Sanchez is currently employed by Prosegur, performing the same or substantially similar job duties as those she performed for Allied Universal.

DocuSign Envelope ID: C4B72003-13FE-490B-A737-985934478CBB

142.    Defendant Sanchez's employment with Prosegur is a material breach of the non-interference covenant, non-raiding covenant, and confidentiality and non-disclosure covenants in the Agreement.

143.    Defendant Sanchez's agreement is equitably tolled during the period of her breach.

144.    As a result of Defendant Sanchez's breach of her obligations under the Agreement, Prosegur has received revenues and profits to which it is not entitled.

145.    Allied Universal has also suffered damages as a result of Defendant Sanchez's conduct, including loss of their substantial training and other investments in Defendant Sanchez.

146.    Allied Universal has no adequate remedy at law.

147.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendant Sanchez from continuing to engage in misconduct and violation of the Agreement, along with applicable damages.

## COUNT 4
## BREACH OF CONTRACT—INJUNCTIVE RELIEF
### (Against Gray)

148.    Allied Universal incorporates all prior paragraphs of this Complaint.

149.    As part of Defendant Gray's employment with Allied Universal, she entered into an Employment and Non-Solicit Agreement with Allied Universal that governs her actions both while employed with Allied Universal, as well as post-employment.

150.    Defendant Gray's Agreement is a valid and enforceable contract containing, among other provisions, a non-interference covenant, a non-raiding covenant, and a confidentiality and non-disclosure covenant.

151.    At all applicable times, Allied Universal has performed its duties under the Agreement.

152.    Defendant Gray, however, has materially breached the Agreement by taking the following actions:

a.    Soliciting Allied Universal employees in violation of her non-raiding covenant, including directly soliciting Defendant Vallejo via e-mail; and

b.    Becoming employed by a direct competitor in a position that will inevitably lead to the disclosure of Allied Universal's trade secret and/or confidential information in violation of her confidentiality and non-disclosure covenant.

153.    On or around December 26, 2022, Defendant Gray resigned her employment with Allied Universal.

154.    Defendant Gray neglected to inform Allied Universal why she was resigning or where she was going.

155.    In fact, Defendant Gray had already accepted a substantially similar position with Prosegur – a direct competitor of Allied Universal.

156.    Defendant Gray is currently employed by Prosegur performing the same or substantially similar job duties as those she performed for Allied Universal.

157.    Defendant Gray's employment as a Human Resources Manager – Central Region for Prosegur is a material breach of the non-interference covenant, non-raiding covenant, and confidentiality and non-disclosure covenants in the Agreement.

158.    Defendant Gray's agreement is equitably tolled during the period of her breach.

159.    Upon information and belief, as a result of Defendant Gray's breach of her obligations under the Agreement, Prosegur has received revenues and profits to which it is not entitled.

160.    Allied Universal has also suffered damages as a result of Defendant Gray's conduct, including loss of their substantial training and other investments in Defendant Gray.

161.    Allied Universal has no adequate remedy at law.

162.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendant Gray from continuing to engage in misconduct and violation of the Agreement, along with applicable damages.

## COUNT 5
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONS
### (Against Prosegur)

163.    Allied Universal incorporates all prior paragraphs of this Complaint.

164.    Allied Universal maintained valid contracts with the Individual Defendants, specifying their post-employment obligations.

165.    Allied Universal expected that these contracts would continue, and all obligations would be fulfilled until the expiration of all relevant terms and provisions.

166.    The Individual Defendants' post-employment obligations under the applicable Agreements remain in full force and effect.

167.    Specifically, the Individual Defendants' non-competition, non-interference, and non-raiding covenants remain operative for one (1) year after their separation from Allied Universal.

168.    The Individual Defendants' confidentiality and non-disclosure covenants remain operative for five (5) years after their separation from Allied Universal.

169.    Defendant Prosegur was and is aware of the contracts between Allied Universal and Individual Defendants.

170.    Specifically, at the time that Defendant Schiller departed for Prosegur, Allied Universal informed Prosegur that it believed Defendant Schiller to be in breach of his Agreement with Allied Universal.

171.    In response, Prosegur promised Allied Universal that it would monitor Defendant Schiller closely and ensure that he abided by all covenants contained in his Agreement.

172.    Prosegur further made Defendant Schiller remove the offensive "Jerry Maguire" GIF from his LinkedIn account, which was clearly targeted at Allied Universal.



173.    Despite that awareness, Defendant Prosegur intentionally and unjustifiably interfered with these contracts by soliciting and hiring the Individual Defendants into positions that would require them to violate the terms of their Agreements.

174.    Particularly, Defendant Prosegur has employed the Individual Defendants in roles that will inevitably lead to the disclosure of Allied Universal's trade secret information; has

permitted Defendants Schiller and Gray to solicit and/or recruit the other Individual Defendants in violation of their non-raiding covenant; and has allowed the Individual Defendants to begin soliciting H-E-B in violation of their non-interference covenants.

175.    Defendant Prosegur's interference was not privileged or justified.

176.    Due to Defendant Prosegur's interference, the Individual Defendants have violated their post-employment obligations with Allied Universal by, among other things, unlawfully soliciting current and/or former Allied Universal employees, becoming subsequently employed by a direct competitor in violation of the non-competition provision of their Agreements, soliciting Allied Universal customers, and divulging Allied Universal's confidential and/or trade secret information.

177.    Defendants have received revenues and profits as a result of their joint misconduct, to which Defendants are not entitled.

178.    Allied Universal has also suffered damages as a result of Defendants' conduct, including loss of their substantial training investment in the Individual Defendants.

179.    Allied Universal has no adequate remedy at law.

180.    Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in misconduct and violation of the Agreements, along with applicable damages.

**COUNT 7**
**VIOLATION OF DEFEND TRADE SECRETS ACT**
**(Against All Defendants)**

181.    Allied Universal incorporates all prior paragraphs of this Complaint.

DocuSign Envelope ID: C4B72003-13FE-490B-A737-905934478CBB

182.    At all times relevant to the claims at issue in this litigation, Allied Universal maintained a protectible interest in its confidential and trade secret information.

183.    This information was and is extremely valuable to Allied Universal and steps were taken to ensure that the information remained secret.

184.    This information is not available to the general public and is closely guarded by Allied Universal. Allied Universal keeps such information strictly confidential in order to protect its customers' privacy and in order to maintain a competitive advantage in the highly competitive security industry.

185.    Allied Universal's confidential information, including the confidential information identified above, is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1833, et seq. ("DTSA") because the information is not generally known outside of Allied Universal's business, the information is not generally known by employees and others involved in Allied Universal's business, Allied Universal has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allied Universal and its competitors, Allied Universal invested significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and Allied Universal continuously uses the information in its business.

186.    The Individual Defendants were under an obligation to keep such confidential and trade secret information secret.

187.    On information and belief, the Individual Defendants ignored (and continue to ignore) their contractual obligations by retaining Allied Universal's confidential information and trade secrets, using that confidential information and trade secrets to unfairly compete with Allied Universal, and passing that confidential information and trade secrets along to third parties who

are not authorized to receive, possess, or access Allied Universal's confidential information or trade secrets.

188.    Unless restrained, the Individual Defendants will continue to use, divulge, disclose, acquire and/or otherwise misappropriate Allied Universal's confidential information and trade secrets.

189.    Upon information and belief, the Individual Defendants have ignored their contractual obligations by retaining Allied Universal's confidential information and trade secrets.

190.    Upon becoming employed by Prosegur, the Individual Defendants are positioned to use and/or disclose such confidential and trade secret information to unfairly compete with Allied Universal.

191.    Upon information and belief, unless restrained, the Individual Defendants in their roles for Prosegur, will inevitably pass along Allied Universal's confidential information and trade secrets to third parties who are not authorized to receive, possess, or access Allied Universal's confidential and trade secret information.

192.    Furthermore, actual or threatened misappropriation of confidential information and/or trade secrets may be enjoined under the DTSA.

193.    If the Individual Defendants are actively using Allied Universal's confidential information and/or trade secrets and ignoring the terms of their agreements and engaging in unlawful activity, then Individual Defendants have no intention of complying with the DTSA.

194.    Consequently, Individual Defendants' actions constitute the actual and/or threatened misuse of Allied Universal's confidential information and trade secrets. Injunctive relief against Individual Defendants is appropriate.

DocuSign Envelope ID: C4B72003-13FE-490B-A737-995934478CBB

195. Allied Universal requests an order enjoining Individual Defendants from using Allied Universal's confidential information and trade secrets and from disclosing Allied Universal's confidential information and trade secrets to anyone not authorized to receive the confidential or trade secret information.

196. Allied Universal further requests an order requiring Individual Defendants to return any and all of Allied Universal's confidential and/or trade secret information to Allied Universal.

197. Finally, Individual Defendants' misappropriation of Allied Universal's confidential information and trade secrets has been willful and malicious, and Allied Universal has incurred significant damages as a result of that misappropriation.

198. The Individual Defendants' actions have also damaged Allied Universal's good will, reputation, and legitimate business interests.

199. Allied Universal is therefore entitled to recover not only compensatory damages, but also punitive damages and attorneys' fees resulting from Individual Defendants' wrongful misappropriation of Allied Universal's confidential and trade secret information.

200. Defendants have received revenues and profits as a result of their joint misconduct, to which Defendants are not entitled.

201. Allied Universal has also suffered damages as a result of Defendants' conduct.

202. Allied Universal has no adequate remedy at law.

203. Consistent with Federal Rule of Civil Procedure 65, Allied Universal is entitled to a temporary restraining order and preliminary and permanent injunction to prohibit Defendants from continuing to engage in misconduct and violation of their Agreements, along with applicable damages.

DocuSign Envelope ID: C4B72003-13FE-490B-A737-9959344478CBB

## COUNT 8
## CONSPIRACY TO MISAPPROPRIATE TRADE SECRETS
## DEFEND TRADE SECRETS ACT – 18 U.S.C. §§ 1832, 1836 et seq.
### (Against All Defendants)

204.    Allied Universal incorporates all prior paragraphs of this Complaint.

205.    Defendants conspired collectively to misappropriate trade secrets with the intent to convert them, and specifically those that are related to product for use in interstate or foreign commerce.

206.    Specifically, Defendants entered into one or more agreement with others for the purpose of defrauding Allied Universal's and committing the conversion and misappropriation of Allied Universal's confidential, proprietary, and trade secret information, and its property.

207.    Defendants have taken affirmative steps in furtherance of these conspiracy agreements, proximately damaging Allied Universal.

208.    Defendants had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act, to further the object or course of action.

209.    Allied Universal suffered injury as a proximate result of these wrongful acts.

210.    As such, Allied Universal further requests that defendant and Prosegur be held jointly and severally liable for their acts and be ordered to pay all actual and consequential damages from their wrongful conduct.

211.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing and grossly negligent, the award of exemplary damages is appropriate.

## COUNT 9
## MISAPPROPRIATION OF TRADE SECRETS
## TEX. CIV. PRAC. & REM. CODE § 134A. 001, et seq.
### (Against Solis-Ramirez and Sanchez)

212.    Allied Universal incorporates all prior paragraphs of this Complaint.

213.    Allied Universal provided both Solis-Ramirez and Sanchez access to valuable and confidential trade secrets. Given the importance of the trade secrets to Allied Universal, it was maintained with the highest degree of security pursuant to the company's procedure and practices.

214.    Defendants, Solis-Ramirez and Sanchez, have maliciously and willfully misappropriated trade secrets by wrongfully compiling and then absconding with trade secret information belonging to Allied, for his/her unauthorized benefit and use and/or the unauthorized benefit and use of others, particularly Prosegur. Defendants, Solis-Ramirez and Sanchez, retained, disclosed, and/or used Allied's trade secrets in violation of contractual and fiduciary obligations to Allied.

215.    Defendants' misappropriation of Allied Universal's trade secrets has caused Allied Universal substantial injury, for which it seeks all remedies provided by law, including actual damages, attorney fees, punitive damages, disgorgement, restation, unjust enrichment, costs, and interest.

216.    Because Allied has no adequate remedy at law, Allied Universal seeks injunctive relief to prevent further harm.

## COUNT 10
## COMPUTER FRAUD AND ABUSE ACT ("CFAA") 18 U.S.C. §§ 1030
### (Against Sanchez)

217.    Allied Universal incorporates all prior paragraphs of this complaint.

218.    Allied Universal's computers are protected computers for purposes of the CFAA, because they are used in or affect interstate or foreign commerce.

219.    Defendant, Sanchez, violated the CFAA by intentionally accessing an Allied Universal-issued laptop, a computer used for interstate commerce or communication, without authorization and by exceeding authorized access to the computer and by obtaining information

from such a protected computer and by obtaining information from such a protected computer, and so causing significant damage.

220.     Defendant, Sanchez, has violated the CFAA by knowingly, and with intent to defraud Allied Universal through its wrongful actions, by accessing an Allied-issued laptop, which is a protected computer, without authorization or by exceeding authorized access to such computer, and by means of such conduct, furthering his/her intended fraud and obtaining one or more things of value, including but not limited, to significant and critical confidential and proprietary information relating to Allied Universal's customers, pricing information, processes, and more. Such confidential and proprietary information was exclusively Allied's property.

221.     Through Defendant's, Sanchez, unauthorized access to Allied's protected computer and system, Sanchez knowingly, and with intent to defraud misappropriated and caused harm to Allied's trade secrets and confidential information, and to the impairment of the integrity and availability of data, metadata, programs, systems, and other information. These actions taken by Sanchez are direct violations of the CFAA – at a minimum, 18 U.S.C. §§ 1030(a)(2), 1030(a)(4), 1030(a)(5) – for which Allied is entitled to injunctive relief. *See* 18 U.S.C. § 1030 (g).

## COUNT 11
## COMMON LAW CIVIL CONSPIRACY
### (Against All Defendants)

222.     Allied Universal incorporates all prior paragraphs of this Complaint.

223.     Defendants conspired collectively to accomplish unlawful purposes and torts discussing in this complaint.

224.     Defendants entered into one or more agreements for the purpose of defrauding Allied Universal and committing the conversion and misappropriation of Allied Universal's confidential, proprietary, and trade secret information.

225.    Defendants have taken affirmative steps in furtherance of these conspiratorial agreements, proximately damaging Allied Universal.

226.    Defendants had a meeting of the minds on the object or course of action, and at least one member of each conspiracy committed at least one unlawful, overt act to further the object or course of action.

227.    Allied Universal suffered injury as a proximate result of these wrongful acts.

228.    As such, Allied further request that Defendants be held jointly and severally liable for their acts and be ordered to pay all actual and consequential damages resulting from their wrongful conduct.

229.    Because their actions in this conspiracy and the underlying torts were intentional, malicious, knowing, and grossly negligent, the award of exemplary damages is appropriate.

## COUNT 12
## ATTORNEYS' FEES

230.    Allied Universal incorporates all prior paragraphs of this Complaint.

231.    Allied Universal is entitled to recover reasonable and necessary attorneys' fees under Chapter 38 of the Texas Civil Practice & Remedies Code (because this suit is, in part, for breach of contract), as well under 18 U.S.C. § 1030, Tex. Civ. Prac. & Rem. Code § 134A.001, and 18 U.S.C. § 1836.

WHEREFORE, Allied Universal requests that this Court enter a judgment in Allied Universal's favor against Defendants and provide Allied Universal the following relief:

A.    Order, adjudge, and decree that Defendant Solis-Ramirez has materially breached her Agreement with Allied Universal;

B.      Order, adjudge, and decree that Defendant Vallejo has materially breached his Agreement with Allied Universal;

C.      Order, adjudge, and decree that Defendant Sanchez has materially breached her Agreement with Allied Universal;

D.      Order, adjudge, and decree that Defendant Schiller has materially breached his Agreement with Allied Universal;

E.      Order, adjudge, and decree that Defendant Gray has materially breached her Agreement with Allied Universal;

F.      Order, adjudge, and decree that Defendants have misappropriated or threatened to misappropriate Allied Universal's trade secrets and confidential information;

G.      Temporarily, preliminarily and permanently restrain and enjoin Defendants Solis-Ramirez and Vallejo from participating in or being engaged directly or indirectly as an owner, partner, director, shareholder, investor, consultant, agent, employee, co-venturer, or otherwise for Prosegur for a period of six months from the date of the injunction;

E.      Temporarily, preliminarily and permanently restrain and enjoin the Individual Defendants from soliciting Allied Universal customers or employees from one year from the date of the injunction;

F.      Award Allied Universal its reasonable attorneys' fees and costs incurred in bringing this action to enforce the Agreements;

G.      Ensure that Allied Universal receives a jury trial on all issues so triable; and

H.      Award such other relief to Allied Universal from Defendants as Allied Universal requests and this Court deems appropriate and just.

Dated: June 26, 2023

Respectfully submitted,

_/s/ Kelly E. Eisenlohr-Moul_
Kelly E. Eisenlohr-Moul (24112896)
keisenlohr-moul@martensonlaw.com
Matthew Crawford (PHV to follow)
mcrawford@martensonlaw.com
Alex Yeung (PHV to follow)
ayeung@martensonlaw.com

MARTENSON, HASBROUCK & SIMON, LLP
500 Davis St.; Ste 1003
Evanston, IL 60201
T: (231)301-1249
F: (404)909-8120

_Counsel for Plaintiff Allied Universal_

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

---

UNIVERAL PROTECTION SERVICE, LP,          Court File No.5:23-cv-00802
d/b/a ALLIED UNIVERSAL,
                          Plaintiff,

v.

PROSEGUR USA, *et al.*,
                          Defendants.

---

## **VERIFICATION**

　　Personally appeared before the undersigned officer duly authorized to administer oaths,

Justin Nagy, President, Central Region, for Allied Universal, who after being duly sworn, states

that the facts contained in this Verified Amended Complaint for Injunctive Relief, Damages, and

Attorneys' Fees are true and correct.

DocuSigned by:

*Justin Nagy*

88343E79B54041D...

Justin Nagy
President, Central Region

## CERTIFICATE OF SERVICE

I certify that I filed this document using this Court's CM/ECF System that will automatically notify all parties or counsel of record.

Allied Universal has also given notice of this filing to Prosegur through their last known attorney by email and UPS overnight service as follows:

Carlos J. Burruezo, Esq.
1646 West Snow Avenue Suite 16
Tampa, FL 33606
carlos@burruezolaw.com

Allied Universal likewise gave notice of this filing to the Individual Defendants by email and UPS overnight service as follows:

Ms. Felicia Solis-Ramirez
165 S. Hill Drive
Lytle, TX 78052
fsolisSolis-Ramirez@hotmail.com

Mr. Roy Vallejo
514 N. 3rd Street
Carrizo Springs, TX 78834
Rvallejo.epd99@yahoo.com

Ms. Tenille Gray
16813 Trevina CV
Manor, TX 78653

Ms. Samantha Sanchez
10219 Dancing Brk
San Antonio, TX 78254
Srsanchez1107@yahoo.com

Mr. David Schiller
304 Charli Circle
Liberty Hill, TX 78642

*/s/ Kelly E. Eisenlohr-Moul*